Judge Ewing
delivered the opinion of the Court.
Turner declared against Johnson in three counts of special assumpsit. His declaration was demurred to,. and the demurrer sustained, and judgment rendered; against the plaintiff; and he has brought the-case to this Court.
If any of the counts be good, the demurrer should not have been sustained.
The first count charges, in substance, that the plain *436 tiff was possessed of a slave, named Edmond, and it was agreed between the plaintifF and defendant, that the plaintiff should place in the possession of the defendant the said slave, and the defendant should place in the hands of the plaintiff the sum of ‡-; the money to be used by the plaintiff, and slave by the defendant, each in consideration of the other. And it was further agreed, that the defendant was to keep the slave in his possession, and not dispose of him; but, should he become dissatisfied with him, he was to return him to the plaintiff, without charge for him; and the plaintiff to return the money to the defendant, without charge of interest, the plaintiff urging upon the defendant, at the time, to keep the slave in the neighborhood with his wife.
In such case, the pltf,, suing for a breach of the con tract by selling the slave for exportation, is not bound to aver a readiness on his part to take back the slave and re store the money ; he had a right to use the money ; and, as it depended on the will of the deft, whether he would return the slave y reclaim the money, and when — pltf. was entitled to notice of deft’s determination in that respect, and reasonable lime to prepare to repay the money; and then, if he failed to do so, deft, might be excused for selling to another.
The second count alleges, in substance, that there was an agreement made between the plaintiff and defendant, that the plaintiff should sell to the defendant, the negro man, for the sum of ,¶>-, and the defendant agreed to buy him, and to keep him with his wife, and not to part them until the defendant became dissatisfied with him, and then he was to return him to the plaintiff, and the plaintiff was to return him the money; with an averment that the slave was worth three hundred dollars more than he was sold for, and was sold for that amount less than he could have been sold for in consequence of, and in consideration of, the promise and undertaking of the defendant.
The third count states, in substance, that the slave had a wife in Warren county, and the plaintiff having occasion to raise a sum of money, agreed to sell him for five hundred dollars less than his real value, in consideration that the defendant agreed to keep him in Warren county, and not. separate him from his wife, and that, if he should be compelled to sell him, he would let the plaintiff have him at the same price he gave for him.
To each of those counts breaches are assigned, in substance, that the defendant did not keep the slave in Warren county, but sold him out of the county, in some one of the southern States, for a large sum of money, without giving the plaintiff notice of his intention to sell *437 Mm, or offering him back to him, at the same price he gave for him; with the usual conclusion to the declaration.
Where there are mutual covenants or undei takings, to he performed at the same time,either party, to sustain an action, must aver a lender.— But if the deft, is to do the first act, or the covenants or undertakings are to be per formed at the same time, it is suflicient for the pltf. to aver a readiness on his part.
But when the defendant is not only to do the first act, but may do it, or not, at his election, and if he will do it, may choose his own time for doing it, it is not necessary for pltf to aver either a tender, or readiness, on his part.
Two objections are raised to the declaration:—
First — that there is no averment of a tender or readiness on the part of the plaintiff.
Second — the undertaking is void, as repugnant to the grant, and as against trade and traffic.
If there be mutual covenants or undertakings, to be performed at the same time, either of the parties, to sustain an action, must aver a tender. If both covenants are to be performed simultaneously, but the first act is to be performed by the defendant, the plaintiff may sustain his action by averring readiness. He is not bound to aver a tender, when the first act is to be done by the defendant, provided he avers and shows that he was ready at the time and place to perform on his part.
But when not only the first act is to be done by the defendant, but that act is confined to his own will and discretion, not only as to the performance of the act, but also as to the time of doing it, then the plaintiff is not bound to aver either a tender or readiness. To require a tender in such case, would be to require him to act before he could know whether the defendant had, in the exercise of his discretion, determined to do the precedent act on his part. And to require him to be ready, would be to require him to be always prepared to do a thing which he could not know whether he would have a right to do, until notified by the defendant of Ms determination.
To require the plaintiff in the case before the Court to be ready, would be requiring him to keep the money always by him, from the time of his sale of the slave, up to the day when the defendant sold him to the south; and if so, the principal object of the sale, namely, to raise money for his use, might be defeated. For, if he was required to keep the money always in his desk, it would avail him but little. Its use would, in that event, be a poor equivalent for the hire of the slave. And if the defendant should sell the slave at any time when he had not the consideration ready to refund, as he could *438 not aver and prove that he was then ready, he might be defeated in his action. The law will not impose such an unreasonable duty upon the plaintiff.
It is said, that if land or chattels be granted or given upon condition that the gran tee or donee shall not alien the land, or thing granted,it is void, for repugnancy, and as being against trade and traffic; but that, if the grant or gift is upon condition that the grantee or donee shall not alien to a particular person, or only to some particular person or persons, it is good. And, also, that if a feoffee hind himself in a bond that he will not alien, it is good; for, in that case, an innocent purchaser cannot be affected by buying a forfeited title, and the feof-fee may answer it in damages-
The first act was to be done by the defendant. Whether he would or would not do that a'ct, was confined to his own discretion. His determination to sell should have been communicated to the plaintiff, and then, if he failed to be ready, at least within reasonable time, the defendant might be excused,
Second. It is laid down in 2 Coke’s Institutes, 30, that if a man make a grant in fee, upon condition that the grantee shall not alien, the condition is void. “And so, if a “ man be possessed of a lease for years, or of a horse or “ any other chattel, real or personal, and give or sell his “ whole interest or property therein, upon the condition “ that the donee shall not alien the same, the same is “ void, because his whole interest and property is out of “ him, so as he hath no possibility of a reverter, and it “ is against trade and traffic and bargaining and con- “ tracting between man and man.”
But it is said, on the same page, “ that these are to be “ understood of conditions annexed to the grant or sale ii- “ self, in respect to the repugnancy, and not to any other “ collateral thing.”
And it is said by the same learned author, “ that, if “ the condition be that the feoffee shall not enfeoff I. S. “ or any of his heirs or issues, this is good; for it does “ not restrain the feoffee of all his powers.” And it was determined in the case Doe on the demise of Gill vs. Pearson, 6 East, 173, that a condition against alienation, except to sisters or their children, annexed to a devise in fee, was good, and for the breach of it, the heirs of the devi-zor might enter.
So that it might be well questioned — if the contract against alienation to the south, or to any except the plaintiff, was annexed as a condition to the sale — whether it would be void. The condition, in such case, would not be against alienation entirely, but only against alienation at a particular place, or to any but a particular person, and could not, therefore, be said to be wholly repugnant to the grant or sale.
If, for the benefit of trade, a condition annexed to a sale, that the purchaser shall not alien the thing sold,is void, and the sale absolute, still that principle would not affect a covenant or agreement that the pur chaser would not sell the thing at a certain place, or out of a certain county, or would sell it only to the vendor, or to some other at a stated price..
A contract,upon eration, not^to sell ¿"slave out of the county, or in any of the southern States, or so as to separate him frorn his greement that, Sí case he is to be sold, he shall be sold to the party of whom he was purchased, or to some other, at an agreed price, or at his value, is a valid contract, for the breach of which an action will lie. And an agreement not to sell a slave at all— being required to prevent the separation of the slave from his wife &c., the court incline to think should be sustained.
*439 The rule seems to inhibit a total restriction on the right of alienation, but not to inhibit the right to impose a restriction against the right of the vendor, to limit and restrict the right of alienation to a certain person or persons, or at a certain place or places. The former is deemed repugnant to the grant or sale, the latter not.
But if, for the benefit of trade and traffic, a condition annexed to the sale, imposing any limitation upon the right of alienation, should be deemed void, and the sale absolute; such a rule, as we conceive, would not conflict with the vendor’s right of action for the breach of a promise or covenant, not to sell at a certain place, or out of a certain county, or to sell to the vendor, or to a particular person, at a stated price.
If the condition was good, as, by its breach, the title in the vendee would be forfeited, such a rule might be deemed against trade and traffic and bargaining and selling, as it would render insecure the title of innocent alienees and purchasers. But a right of action against the vendee, for a breach of promise or of covenant, or for the breach of the condition of a bond not to sell, would produce no such mischievous consequence.
In the 2d vol. Coke’s Institutes, 29, it is said that, if a feoffee be bound in a bond that he will not alien, this is good, for he may notwithstanding alien, if he will forfeit his bond. And so we would conclude that he may alien if he will break his covenant or promise made upon a valuable consideration. In eithe,r event the title is good in the hands of his alienee; but in the first case, he is liable for his bond, and in the two latter, for the damages that his vendor has sustained.
So bonds in restraint of trade generally are^void. But in the leading case of Mitchell vs. Reynolds, 1 Pr. Wms. 181, it is laid down that to this general rule there are exceptions: first, that if the restraint be only particular, as to the time or place, and there be a valid consideration given, the contract or agreement may be good. Master &c. of Gunmakers vs. Fell, Willis, 388; Chesman vs. Nainby, 2 Strange, 739; Burr vs. Guy, 4 East, 190.
Upon the whole we are satisfied, that a promise, upon a valuable consideration, not to sell the slave in *440 question out of the county of Warren, or not to sell him in any of the southern States, or not to sell him so as to separate him from his wife; or a promise, in case he sold, that he would sell to the plaintiff at his value, or at an agreed price, or a promise in case he became d¡ssatisfied with him, that he would return him to the plaintiff, and receive back his money, would be good, ^ action would lie for a breach of either of such promises. Neither of such promises would tend to a total,but only to a restriction upon the right of alienation.
Indeed, we are strongly inclined to the opinion, that a promise, founded upon a sufficient consideration, not to sell a slave at all, when prompted by the benevolent motive of preventing the husband from being separated from the wife, or the child from the parent, or of securing for the slave a good master, or the like, would be sustained.
If the policy of trade and traffic would inculcate the propriety of treating such a promise as void, humanity and the eternal principles of justice would inculcate a different policy.
It is true, slaves are property, and must under our present institutions, be treated as such. But they are human beings, with like passions, sympathies and affections with ourselves. And while we must treat them as property, we should not entirely overlook the obligations due to them as human beings. It would, therefore, seem to be a hard and unconscientious rule, which would restrict a benevolent master in the sale of a favorite slave from providing, by express contract, for his peace and*comfort, or against a merciless disregard of his moral rights, or that would declare such a contract void, as against the policy of trade and traffic.
Even in tlje case of other personal property, we have met with no direct authority, declaring void a promise or covenant not to sell, or inhibiting a right of action upon such a promise or covenant; and if the anala-gy between the sale of personal and real estate, will hold good, such a promise or covenant would be good; as, according to the principle of the rule, as laid down *441 by Lord Coke (supra,) the vendee may sell, if he will break his covenant or promise. But if the rule should not be carried so far as to other personal property, we could scarcely doubt that it should be carried that far as to slaves.
me inducement to sell a slave, or to reduce the price, being, in part, a promise made by the purchaser,not to sell him so as to separate him from his family, or to sell him only to the vendor, or the like, is a good consideration to uphold the agreement.
The consideration set out in each of the counts of the declaration is sufficient. The promise, not only superinduced the sale, but the sale al a price below the value of the slave. The motive for selling, was not only the price given, but also the promise not to sell except upon certain terms, or in a certain way. And the motive or consideration of the promise, was the sale at a lower price than the value of the slave, or the price that he would have commanded by a sale to others, or to the defendant, without such promise.
We are, therefore, clear, that all of the counts are good, and the demurrer should have been overruled.
Judgment reversed, and cause remanded, that the demurrer may be overruled, and further proceedings had. And the plaintiff in error is entitled to his costs in this Court.