Judge Marshall

delivered the opinion of the Court.
This action was brought by Mason, against Hawley, upon a covenant executed by each, whereby Mason agreed to deliver to Hawley, between the 15th and 20th of October, 1837, fifty well fatted hogs, to weigh two hundred and upwards each, to consist entirely of barrows and spayed sows, and to be delivered in good merchantable order; for which, Hawley agreed to pay, on delivery, four dollars and sixty two and one half cents per hundred pounds gross.
The plaintiff, in his declaration, avers that, on the 16th of October, 1837, he did tender and offer to deliver to the defendant, on his own farm, fifty fatted hogs, that weighed two hundred and upwards, all of which were barrows and spayed sows, well fatted and in good merchantable order at the time. But that the defendant failed and refused to receive said hogs, and to pay therefor four dollars and sixty two and one half cents per hundred pounds gross, for what they would weigh.
The defendant in his plea, traverses every circumstance of the alleged tender, and upon this traverse, issue was joined.
A tender and other facts, proved on the trial.
Instructions, and principal question for decision.
In cases of mutual, concurrent, covenants, where the acts are to be done simultaneously, the pl’tiff must aver and show a tender of performance on his part, to enable him to maintain an action for a breach by the other party.
*33 It was proved on the trial, that, on the 16th of October, 1837, Pollett for the plaintiff, drove fifty three hogs to the farm of the defendant, and told him he then tendered the hogs, and wanted the money; to which Hawley replied, that he had not the money, and was therefore, not prepared to receive and pay for the hogs; but expected to get the money in a few days, or perhaps, in a week or two.
The witnesses say ‘he appeared to be pleased with the hogs,’ said ‘they were fine, good-looking hogs,’ and seemed willing to take them if he could get them without the money; which being refused, he offered eighty dollars by way of compromise; which being also refused, he then required that the steelyards should be applied to the hogs, and commenced making preparations for weighing them. But Pollett, saying he would not weigh them unless the defendant paid him the money, drove them on six or seven miles further, and tendered them in fulfilment of another contract. The opinions of the witnesses as to the weight of the hogs offered to Hawley, are somewhat variant; but the actual weight of some of them, on the morning before, and the morning after the tender, with some other facts distinctly proved, tend strongly to the conclusion that there were not fifty, and not much more than half that number, of the hogs tendered, that weighed as much as two hundred pounds each. Evidence was, however, admitted, against the objection of the defendant conducing to prove that Pollett had other hogs in the neighborhood, which were subject to his order, and which would have come up to the requisite weight.
On this evidence, the Court instructed the jury, in effect, that if the defendant expressed himself satisfied with the hogs tendered, and made no objection to them as not coming fully up to the requisitions of the contract, he was estopped to deny that the hogs were not such as the plaintiff was bound by the contract to deliver; and the propriety of this instruction, to which the defendant excepted, presents the principal question now to be considered.
It has often been determined that, in cases of mutual concurrent covenants, where the acts to be done are sim *34 ultaneous, neither party can maintain an action against the other for a failure on his part, without a tender of performance on his own part. It was decided in the case of Turner vs. Johnson, 7 Dana, 437, that where the defendant is to do the first act towards a mutual performance, it is sufficient for the plaintiff to aver and show a mere readiness on his part. This distinction, however, does not relax, but should rather add rigor to the rule, where, as in this case, the first step was to be taken by the plaintiff himself.
Where def’t is to do the first act, it is sufficient for the pl’tf to aver and show a readiness (without a tender) on his part; aliter, where the pl’tf is to take the first step.
When one party avows his inability to perform, the other may dispense with all further formalities; but such avowal can have no retroactive effect; nor will it excuse him who is to do a precedent act, from showing, not only his willingness, but his ability and readiness, to do it. So—
Where two covenanted together-one, that he would deliver so many hogs, of such a description and weight, at a certain time; the other, that he would receive, & pay for them, at a stipulated rate; and the seller took a sufficient number, at the proper time, to the farm of the purchaser; who appeared to be satisfied with them, but said he had not the money to pay, but would soon, have it, and proposed to receive the hogs without paying for them; and that being refused, then proposed to try their weights by steelyards, which was also refused, and the hogs driven away by the seller; who then brought his action for an alleged breach by the purchaser, in failing to receive and pay for the hogs:—
Held that these facts do not excuse the plaintiff from showing that he was prepared, as well as willing, to do all that could have been required of him, in case the defendant had been ready and willing to comply with the agreement on his part: e. g. he must show that the hogs were of the agreed description and weight, &c.
The avowed inability of the defendant to pay the money when the plaintiff offered performance, should be deemed sufficient to dispense with all subsequent formalities on the part of the plaintiff; but it had no retroactive efficacy, and certainly did not cure substantial defects in what plaintiff had already done, nor dispense with the necessity showing that he was, not only willing, but ni fact able and ready, to perform, at the time and place at which he charges the breach to have been committed by the defendant.
In this case, the plaintiff, both by his conduct out of doors, and by his pleading in Court, has staked his right recovering on this covenant, upon the sufficiency of the acts done by him on the 16th of October, to entitle him to an action for the failure of the defendant. He was bound, under the issue, to prove that he was them and there prepared, as well as that he then and there verbally offered, to do all that by his contract he would have been bound to do, if the defendant had been then and there ready to comply on his part. This, without the technicality of a tender of the precise number of individual hogs, is the substance of that offer of performance which he has averred, and which he was bound to prove, in order to entitle himself to damages for the inability of *35 the defendant. That inability was no wrong or injury to him, unless he was substantially prepared to perform his part of the contract; and it gives him no cause or right of redress, unless he offered a substantial performance; which he most obviously did not do, unless fifty of the hogs presented to the defendant for selection, weighed two hundred pounds or upwards.
Nor do the defendant’s expressions, which indicated that he was satisfied with the hogs tendered, estop him from denying that they were of the weight, description, &c. required by the pltf’s stipulations.
Tho’ there are cases where a party will be concluded by an estoppal not pleaded, or by his silence, or deceit, where he was bound to disclose the truth,—the general rule is, that an allegation, in pleading, of an offer to perform a contract, leaves the fact at large; so that the party making the allegation, cannot be excused from proving it, by showing acts or words of the other that might estop him from denying it. And—
Where a party has accepted goods, tendered to him, under a contract, (without fraud or peculiar facts) he cannot allege a nonperformance; but this rule does not apply where the goods are not delivered, though the party may seem to be satisfied with them.
*35 The instruction given, although it seems substantially to dispense with the necessity of the plaintiff’s being actually prepared, or of his proving that he was actually prepared, at the time and place of the alleged tender, to deliver fifty hogs of the description required by the contract, should, perhaps, be understood as implying that the expressions of the defendant therein refered to, and his failure to make specific objections, were not only sufficient to prove that the hogs were of the requisite weight and quality, but that, operating by way of estoppel, they did prove it so conclusively as that it could not be disproved.
Whether we look to the pleadings and issue, or to the facts, either as proved, or as supposed in the instruction, the idea of a technical estoppel is entirely inapplicable and inadmissible. By the pleadings, the naked question of a sufficient tender, or of an offer of performance on the part of the plaintiff, is put in issue, and no estoppel is relied on. According to the general doctrine of estoppel, this state of the pleading left the fact, at large, to be made out by such proof as the parties could command—and to be determined by the jury, upon the evidence before them. There are, indeed, cases in which, in consequence of the relation between the parties, or of some solemn act, one of them is concluded as to certain facts, though the estoppel be not pleaded. And there are cases in which, if a party is silent, or asserts a falsehood, when he should speak, he will be precluded afterwards from taking advantage of such acts or omissions as may have been induced by his silence or false affirmation. It has also been considered that, the actual acceptance of goods under a contract for the delivery of goods of the same species, unless induced by fraud or other peculiar circumstances, should preclude the party accepting *36 from afterwards alleging that the contract had not been complied with. But the present case has none of the characteristics on which any of these principles depend.
The plaintiff having chosen his time for tendering performance on his part, and requiring it of the defendant, and having been permitted to make such preparations, and such demonstrations of readiness as he thought proper, had no right to require any aid from the defendant, in proving that his demonstrations of readiness were sufficient.
And the defendant having at once avowed his inability to receive and pay for the hogs according to the contract, was under no further obligation either to speak or to remain silent. He certainly had a right to suppose, and probably did suppose, that the hogs which had been driven three or four miles for the purpose of being tendered to him, under the contract, and of testing his ability to perform his part, were such as the contract required. Having no exact knowledge on the subject, he had no right to say that they did not weigh enough; and having no money to pay for them, he had no right to require the application of the steelyards to them. The utmost effect that can be reasonably allowed to his failure to make specific objections, and to the expressions of satisfaction referred to in the instructions, but which can scarcely be so denominated, is to say that they conduced to prove that he supposed the hogs to be such, in point of weight and other qualities, as he was bound to take, under the contract. And the utmost effect that can be reasonably given to the mere inference of such a supposition, founded on appearances and on the representations of the plaintiff who undertook to know the facts, rather than on any means which he himself had of knowing them, is to say that, in the absence of all other testimony, it might, perhaps, be sufficient to prove that the facts were as he supposed them to be. Even this might be going too far; and we certainly do not mean now to decide that it is not. But we are satisfied that there is no circumstance detailed in the evidence, which could have given to any expression or act or omission of the defendant as now proved, the effect of estopping him from denying that the hogs, or any fifty of them, weighed two hundred pounds *37 each. As the case stands, all that he said, and did, and omitted, can amount to no more than an implied admission of a fact which was, and ought to have been, more within the knowledge of the other party; and even this admission should be considered as withdrawn, by his ultimate reference to the steelyards, as the proper test of weight. If any previous conduct or expressions had been calculated to put the plaintiff off his guard, and to induce him to do or to omit any thing to his own injury in the premises, which, however, is not admitted, this significant reference would seem to have been sufficient to prevent any such effect, and to show the plaintiff that, if he meant to assert a right to recover damages against the defendant for his inability to pay according to the contract, he must do it on full proof that he himself was in no default.
Where the pleadings, in an action of covenant, required the pl’tff to prove a tender of a particular description of hogs, to the def't, and the proof failed as to the description, proof that the pl’tf had others in the neighborhood, that did answer the description, was inadmissible-especially when it did not appear that def't knew that.
But desisting from the further pursuit of this question, we are of opinion that, the instruction, whether considered with a view to the issue made up by the pleadings, or to the evidence which was before the jury, was erroneous and misleading.
We are also of opinion that the Court erred in the admission of the testimony objected to by the defendant, and which went to show that there were, at the time of the alleged tender, other hogs in the neighborhood, which the plaintiff might have tendered, but did not, and which the witness said would have weighed two hundred pounds and upwards. The issue related solely to the tender averred in the declaration, and did not bring in question the ability of the plaintiff to have made, either then or afterwards, a tender of other and more suitable hogs. And if, as is supposed in the reason given for admitting this testimony, there was any presumption arising in the case, that the defendant had rejected the hogs because they were deficient in weight, for which, however, we see no ground, still, as this presumption itself related to a matter not within the issue, it furnished no ground for the introduction of rebutting evidence which was itself irrelevant. Besides, we do not perceive how a fact of which it is not shown that the defendant had any knowledge, could have operated upon his conduct or motives; *38 and therefore, do not perceive how the proof of that fact, without proving the defendants knowledge, could have rebutted any presumption as to his motives, arising upon other evidence in the cause.
Whether the jury were authorized, even under the instruction given, to find the verdict as rendered, we deem it unnecessary to decide as a distinct question; inasmuch as the errors above noticed, which were committed in the progress of the trial, and were certainly calculated to affect its result injuriously to the defendant, required that a new trial, which was moved for on these grounds as well as others, should have been granted.
The judgment is reversed, and the cause remanded for a new trial, to be had on principles not inconsistent with this opinion, and without payment of cost.