**CASE.**

*Case 90.*

## Oldham & Kerr *vs* Bentley.

ERROR TO THE MADISON CIRCUIT.

*Deceit. Evidence. Fraud.*

*April 28.*

JUDGE MARSHALL delivered the opinion of the Court.

The case stated.

THIS is an action on the case, brought by Bentley for an alledged deceit practised on him by the defendants in procuring the sale to one of them, of "a family negro slave." The declaration avers in substance, that being under the necessity of selling said slave, he was willing to sell her to a citizen of Madison county, to be kept in his or her family, for his or her own use, but was unwilling to sell her to be taken by slave dealers to the south; and that the defendants being well apprised of this, fraudulently and deceitfully combined, and for the purpose of inducing him to sell the slave to them, or one of them, falsely represented that they, or one of them, wished to purchase her for his or their own use, in Madison county, Kentucky, where they resided, and not for the purpose of selling her to be taken off by slave dealers to the south; that said slave was worth, and the plaintiff could have sold her to slave dealers to be taken to the south, for $400, but would not sell her for any such purpose; all which the defendants well knew at the time of their representations aforesaid; that at the time of making said representations, they intended to purchase, not for their own use to be kept, &c., but with the fraudulent intention of selling her for profit, to be carried directly by a slave dealer, to the southern market; that the plaintiff, giving credit to the representations aforesaid, made by the defendants, sold and delivered said slave to them, or one of them, for the reduced price of $325; and that the defendants, intending to deceive and defraud the plaintiff, did not keep the said slave in Madison county, for the use of them, or either of them, but very shortly after the purchase, sold her to a slave dealer or his agent to take to the south, and thereby deceived and defrauded the

plaintiff and caused great distress and anxiety of mind in him and his family.

A demurrer to this declaration having been overruled, the defendants filed separate pleas of not guilty, and a verdict having been found for the plaintiff, a judgment was rendered in his favor for $100, the damages assessed by the jury. A motion for a new trial was overruled; and the demurrer having been virtually withdrawn by the pleas, the case stands before this Court upon the questions: 1st. Whether under the liberal construction and favorable implication to which the declaration is entitled, after a verdict for the plaintiff, it presents substantially a cause of action. 2d, Whether the evidence authorized the finding of the facts essential to the support of the cause of action thus presented. And 3d. Whether there was any error in the opinions of the Court during the trial, which should impair the effect of the verdict and entitle the defendants to a new trial. To sustain the judgment each of these questions must be answered in the affirmative.

1. If the defendants combined for the purpose stated in the declaration, it is immaterial to the cause of action against both, to which of them the sale was actually made; and the want of certainty in the averment on this point, is unavailable, at any rate after verdict. The case presented is that the defendants knowing the necessity and the disposition of the plaintiff as stated, combined to effect the purchase and sale of the slave for their joint profit, and that by inducing the plaintiff, by their false representations, to believe that they would keep her in the county, and not sell her for exportation, while at the time they intended so to sell her for the purpose of gain, they did procure the sale to one of themselves, at a reduced price, and did, soon after, re-sell her for their joint benefit, to be directly exported to the south. The fair implication is, that the slave, in consequence of the false representations of the defendants, was sold to them for less than she was worth; that in pursuance of their previous design, she was speedily re-sold for her full value, for a purpose in direct opposition to their previous representations, and in violation of the motives of the plain-

OLDOAM & KERR
*vs*
BENTLEY.

tiff, to which those representations had been addressed, and under which he had been induced, by his confidence in them, to sell the slave to the defendants.

The declaration, when thus most favorably construed, presents a case not heretofore decided by this Court. But the case of *Turner* vs *Johnson*, (7 *Dana*, 435,) decides in effect, that a promise by the purchaser of a slave, not to sell him out of the State or county, when constituting a part of the contract of sale, and made in consideration of obtaining the slave at a reduced price in consequence of such promise, is valid, and that its violation by the purchaser, is a good ground of action by the vendor. We think the reasoning of the opinion in that case, establishes its conclusion upon solid foundations.

A vendor of a slave in consideration of a promise by vendee not to take him out of the State, sold the slave at less than his value, the vendee violated his promise to keep the slave within the State—Held that he was liable to vendor for difference between the price given and the value of the slave, or if such representations, made with the view to obtain the slave at less than his value, and it has that effect, when the intent is to obtain the slave at a low price and not to adhere to the promise, it is fraudulent and renders the purchaser liable if violated.

The promise with regard to the future disposition of the slave being a part of the consideration of the sale, and being the entire consideration for a reduction of the price, these also constitute a consideration for the promise, which renders it valid and causes its breach to be in law, an injury to the vendor, for which the law will furnish redress. But representations of the same import as to the intention of the purchaser, may also, if confided in, constitute a part of the consideration of a sale, and the entire consideration for the reduction of price; and although if made in good faith, and not amounting to a promise, they may not, like a promise, impose a permanent obligation for the future; yet it seems certain, that if made with the view and with the effect of thereby obtaining the advantage of a purchase at a reduced price, the party making them must be held bound, both in morals and law, for their being true at the time, and made with the purpose of acting accordingly. If so made and not amounting to a promise, a subsequent change of purpose not being provided against by the exaction of a promise, might not constitute a legal ground of action. This would be a case of *damnum absque injuria*. But if the representations are made with the intention, at the time, of deceiving the vendor, and of inducing him thereby to make the sale, and at a reduced price, in the faith of representations, which the purchaser, at the time, did not intend to observe, and therefore knew to be false,

they are fraudulent, and a subsequent sale in direct violation of them, constitutes not only a loss, but in point of law,. an injury to the vendor.

Whether such representations of the purchaser constituting an inducement to the sale, and a consideration for a reduction of the price, should not be regarded as importing a promise, though not made in that form, we need not decide. A false and fraudulent representation made by one party to a contract, whereby he makes gain to himself, and occasions loss to the other party, gives to the defrauded party a cause of action for the deceit, provided the representation relate to a matter deemed material, and as to which the deceived party has a right to require a promise from the other, or to look to him for a true representation. And we think the case of *Turner* vs *Johnson* decides that the future disposition to be made of a slave, by a proposing purchaser, is, as between him and the vendor, a matter of this sort.

The declaration then, shows a deception practised by the purchasers upon the vendor of the slave, in a matter affecting the rights and interests of the latter, and as to which he had a right to confide in the representations of the former, and it shows an injury to the plaintiff by reason of this deception. It is, therefore, deemed sufficient.

2. With regard to the evidence, it is only necessary to say, that although not explicit on several of the points necessary for maintaining the action, it was sufficient to authorize the finding of all the facts which, according to the foregoing view, were essential to a verdict for the plaintiff. But as it was not of such a character as that the jury were bound to find for the plaintiff, it is necessary to enquire whether there was any error in the progress of the trial, by which it may have been affected.

3. It is objected that the Court improperly refused to tell the jury, that the admission of one of the defendants in the absence of the other, was not evidence against both. But as there had been previous evidence conducing to prove a combination, the evidence objected to was properly left to the jury, with the instruction that unless they believed from other evidence, that the defendants had combined for the purpose of effecting the

Where two defendants were charged with combining in order to commit a fraud, if there be any proof of combination the declaration of one is, in the absence of the other, properly left to the jury,

with instructions that if they believed there was a combination, the evidence was competent against both, otherwise against the party making it alone.

purpose as alleged, this evidence should have no effect as proof except against the defendant who made the admission.

The statements of the witness Francis, that he told the plaintiff when he was proposing to purchase the slave in question; that he wished to purchase for an individual, who said he was purchasing slaves to carry to another State, was strictly admissible, as showing the actual character of the proposition and the motives for its refusal. The statement of the same witness that the individual referred to, said he had purchased a good many negroes in Madison and taken them off, might possibly have affected the verdict, inasmuch as there was no direct evidence that the slave in question was actually taken from the county, by a negro buyer. But we are not satisfied, that even without this statement, the jury would not have been bound from the other evidence to find that fact, and should hesitate to reverse the judgment for the admission of this evidence.

We are of opinion, however, that the instruction given by the Court on motion of the plaintiff, was calculated to mislead the jury, by withdrawing their attention from the fraud alledged in the declaration, which consisted in the intention to deceive the plaintiff by false representations, as to the purpose of the defendants in buying the slave. The instruction makes the finding of the jury for the plaintiff to depend upon their belief, that at the time of the sale, it was understood and agreed between the parties, that the slave was not to be sold by defendants to go in the hands of negro dealers; that the defendants acted in concert for their mutual gain, and that they afterwards sold to a negro dealer &c. This instruction would have been right in an action of assumpsit, for a breach of the promise not to sell to a negro dealer. But fraud is the gist of the present action, and the plaintiff was not entitled to recover, unless the jury found that the representations or agreement, as to the future disposition of the slave were at the time false and fraudulently made with a view to gain, and that the sale was induced by the plaintiff's confidence in them. The jury might indeed have inferred the falsehood and fraudulency of the representation or agreement, from the fact of the subse-

quent sale with other circumstances in the case. But the Court had no right to assume it, as the consequence of a breach of contract; and the verdict under the instruction given does not prove these essential facts.

For this error in the instruction the judgment is reversed, and the cause remanded for a new trial, in conformity with this opinion.

*Harlan & Craddock* for plaintiffs: *Turner* for defendant.