## McGAR *vs.* WILLIAMS.

1. One who contracts with a workman for services within his art or calling, has a right to rely upon his representations as to his skill ; and although the law will not seek to compel a man to perform that which is impossible, yet it will not allow the workman, after he has obtained money as the price of stipulated services which he cannot perform, by false and fraudulent representations as to his skill in his business, to defeat a recovery for the deceit and consequent injury by setting up the impracticability of those services.

2. Therefore, in an action for deceit against a tinner, who followed the business of putting tin roofs on houses, for that he falsely and fraudulently represented that he would put a tin roof on plaintiff's house which would not leak for twenty years, whereas the said roof did leak before the expiration of two years,—the true question to be submitted to the jury is, not the practicability of putting on a tin roof which would last twenty years without leaking, but whether the representations (if made) were false, and whether plaintiff was thereby deceived to his injury.

3. If defendant's representations related to putting a roof on a building to be erected upon an agreed plan, and plaintiff afterwards, without defendant's consent, caused a material change to be made in the building, thereby rendering it necessary to make a material change in the form of the roof, he must be considered as having abandoned the original contract, and cannot hold defendant bound by his representations as to the original plan ; but if · defendant's representations as to the character of the roof had no reference to any particular plan, and he proceeded to put the roof on the building under his contract, without making any objection to the alteration of the plan, the change would not affect his liability.

4. A partial payment made by plaintiff after discovering that the roof leaked, without objecting to it on that ground, is a circumstance to be weighed by the jury in determining whether any fraud was practiced by the defendant, but it cannot operate as an estoppel *in pais*, nor as a release or waiver of an existing cause of action.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

TRESPASS ON THE CASE by John McGar against R. & R. Williams, for that (as alleged in the first count) the said defendants, who were partners and tinners by trade, and carried on the business of putting tin roofs on houses, being desirous to procure plaintiff to employ them to cover a certain building which he was then erecting in the city of Montgomery, with a tin roof, at a stipulated price, wrongfully contriving and intending to deceive and injure plaintiff, falsely, fraudulently, and deceitfully represented and warranted to him, that they would cover his said building with a tin roof which would not leak for twenty years, and thereby induced him to agree to furnish and pay for the tin, and to pay them a stipulated price per foot for putting it on; and plaintiff avers, that he accordingly did furnish the tin for said roof, and paid the defendants their stipulated price for putting it on, but that their said representations were false and fraudulent, and that said roof did leak within less than two years from the time it was put on, and continues to leak; all which was well known to defendants when they made their said false and fraudulent representations; by means whereof, &c., defendants falsely and fraudulently deceived plaintiff, and he has sustained damage, &c.

The second count alleged, that the plaintiff, at the special instance and request of the defendants, who were tinners by trade, &c., employed them to put a tin roof on a certain building which he was then erecting, and promised to pay them a stipulated sum for the same; that he was induced thus to employ them by their false and fraudulent representations that they would cover said building with a tin roof which would not leak for twenty years; that he furnished the materials for said roof according to his contract, and defendants used them in putting on said roof; and that their said representations, as they well knew when they made them, were in fact false and fraudulent, and said roof did leak within less than two years after it was put on said building; whereby plaintiff has sustained great damage, &c.

The defendants demurred to the whole declaration, and to each count separately, but their demurrers were overruled; and they then pleaded "the general issue, with leave to give any matter of special defence in bar in evidence."

The substance of the evidence adduced on the trial, as set out in the bill of exceptions, may be thus stated : One Seth Robinson, who was plaintiff's agent in contracting for the building of the house, testified, "that a conversation was had at his store in Montgomery between plaintiff and defendant Ralph Williams relative to the covering of the roof of said house ; that he could not recollect the precise language used by either of the parties, but his recollection of the substance of what was said by each was about as follows : Said Ralph Williams made application to plaintiff to get the contract for covering said house with tin ; plaintiff said in reply, that he did not like tin roofs,—that they were leaky, or apt to leak ; Williams then said, he could put a tin roof on said building which he would guaranty would not leak for twenty years, or which he would guaranty would last twenty years without leaking any,—that there was a new mode for putting on a tin roof, which would prevent it from leaking ; plaintiff answered, that twenty years was as long as he expected to live himself, and he would give Williams the job ; and plaintiff further said, in the presence and hearing of said Williams, to witness, as his agent, 'I turn Mr. Williams over to you ; you can let him put on the tin roof.'" The testimony of said Robinson further tended to show, that there was in his possession, at the time of said conversation, a drawing of the plan of said building and of the roof, but it was not proved that this had ever been shown to the defendants, or either of them ; that this plan was changed by plaintiff, after said contract with defendants, but before any work had been done on the roof ; that defendants, so far as witness knew, did not make any objection to this change in the plan, but witness was absent from the city when they commenced covering the roof ; and the proof further tended to show, that this change in the plan of the roof made it more difficult to put on a roof that would not leak ; but on this point there was a conflict in the evidence.

The proof further tended to show, that said Robinson and Capt. Wright, who was his commercial partner, discovered that said roof leaked badly the first rain that fell after its completion ; that they afterwards made the last payment on the contract to the defendants, but said nothing to them at the time about the leaking of the roof ; that Robinson some

time afterwards notified defendants that the roof leaked, and required them to repair it, but they refused to do so ; that the leaking caused considerable damage to the building, and that several hundred dollars had been expended by plaintiff in repairing the roof. "The proof further showed, or tended to show, that at the time said roof was put on, and at the time the said agreement was made to put it on, it was impossible to put a tin roof on such a building, which would not leak any for twenty years, or which would last twenty years without leaking any ; and this proof was made by tinners, who had been for many years engaged in that business, and who had covered many buildings with tin."

"This being, in substance, all the evidence, the court charged:

1. " That if the jury believed from the evidence that defendants represented or warranted that they would put on plaintiff's said building a tin roof which would not leak any for twenty years, or which would last for twenty years without leaking any, and that it was impossible, with any human skill or ability, at the time of such representation or warranty, to put such a roof on said building, then they must find for the defendants, and the plaintiff could not recover ; and to this charge the plaintiff excepted."

2. " But further, that if they believed it possible, by the expenditure of any amount of skill, money, or labor, to make or put on said building a tin roof which would not leak any for twenty years, or which would last for twenty years without leaking any, then the defendants would be bound to make or put on such roof, if the evidence in the cause showed that they had represented or warranted so to do ; and to this charge, also, the plaintiff excepted."

3. " In this connection, plaintiff requested the following charge : That if the jury believe from the evidence, that Williams, from his occupation and business, knew that a tin roof could not be made to last twenty years without leaking, and the plaintiff did not know it ; and yet Williams agreed with plaintiff to make the roof of tin, to last for twenty years without leaking, and warranted that it should not leak for twenty years, then such agreement and warranty are not void, as being impossible. This charge was given as requested by the plaintiff."

4. "In the same connection, the defendants then asked the court to give the following charge : That if the jury believe from the evidence, that Williams either represented or warranted that the roof he should build for plaintiff would last for twenty years, without leaking any during that period ; and if they further believe from the evidence, that it was impossible, at the time said representation or warranty was made, to cover with tin a roof, of the character of that covered by defendants for plaintiff, that would not leak any for twenty years ; and that plaintiff knew, or with reasonable diligence might have known, this impossibility, then they must find for the defendants. This charge was given to the jury, at defendants' request, and plaintiff excepted."

5. "The court further charged the jury, that if they believed that the representations of Ralph Williams, as testified to by Robinson, were made to plaintiff as to the original plan of the roof, and that after said representations were made there was a material change made in the plan of the roof, without defendants' consent, then they must find for the defendants, and plaintiff could not recover ; and to this charge, also, the plaintiff excepted."

6. "Further, that if defendants' representations were made to plaintiff, as testified to by Robinson, and if the roof which was afterwards put on by them did leak, and thereby damage was done to said building before this suit was commenced ; still, if, after the discovery of such leaking, and a full knowledge of all the facts connected therewith, any payment was made to defendants for their work in putting on said roof, as testified to in the foregoing evidence, without objection to the leaking of said roof, or any complaint as to the damage done thereby, then plaintiff could not recover on the first count in his declaration, but such payment, of itself, would not bar a recovery on the second count of his declaration. To this charge, also, plaintiff excepted."

The charges of the court are now assigned for error.

BELSER & BARRETT, for the appellant :

Each count of the declaration is good as a count in case for a false warranty, and also as a count in case for a deceit.— Munroe v. Pritchett, 16 Ala. 785; Myers v. Gilbert, 18 *ib*. 467;

Barney v. Dewey, 13 Johns. 224; Oldham v. Bentley, 6 B. Monroe 431.

The representation and warranty of defendants did not relate to any particular plan of the building, but only to putting on the building, without regard to shape or plan, a tin roof which would not leak for twenty years. Both parties so understood it, and both parties acted accordingly. Such is shown to be the fact, ·in this· respect, both by the declaration and proof.

There is a class of cases where no contract can be made, because the consideration is impossible,—" as if the consideration be a promise that A shall go from Westminster to Rome in three hours."—Chitty on Con. 58; Story on Con. § 141; Parsons on Con. 382. "But there is a distinction between a contract to do a thing which is impossible in itself, and one whereby the party engages to do something which is absolutely impossible; for in the former case, the contract subsists, notwithstanding it is beyond the power of the party to perform it."—Chitty on Con. 630. And if it be "impossible in fact, but not impossible in its *nature*", the defendants are liable.—Story on Con., § 141. If the doctrine of "impossible considerations" has any application to this case, it cannot avail the defendants, because this is a case of a contract to do a thing which is "impossible in fact, but not impossible in its nature", and good against defendants.—Chitty on Con. 630, and cases there cited in note 2; Parsons on Con. 383-4; Story on Con. (first ed.) § 141; ib. (second ed.) § 463.

But the doctrine of "impossible considerations" has no application to any such case as the present, for the following (among other) reasons:

1. That doctrine, whenever it applies, is based upon a reason. "The reason is obvious: from such a consideration no possible benefit or advantage could be derived to the one party, and no detriment to the other; and if that which is offered or provided as a consideration cannot happen, the mere words alone are a nullity."—Parsons on Con. 382-3; 2 Story's Eq. Juris., § 1307. This reason does not exist in or apply to this case, and "*ratione cessante, lex cessat*." In this case, there is something more than "the mere words alone"; there is an actual benefit and advantage to the defendants—

the price of the work actually received by them on the completion of the work ; there is an actual detriment to the plaintiff—the money paid out by him for the tin he furnished them to put on the roof, and the extensive injury done to his large building by the leaking through the roof.

" It is undoubtedly possible, that one may make a promise which it is utterly impossible to perform, and nevertheless the promisee may derive a positive advantage from the mere fact that the promise is made. In such a case, supposing the transaction free from all taint of fraud, this advantage would be a good consideration, but not the promise by itself."— Parsons on Con. 383; 2 Story's Eq. Juris., § 1307.

It is not pretended that there was any fraud on the part of the plaintiff, and if there was fraud on the part of the defendants, it does not lie in their mouth to avail themselves of their own fraud.

2. The doctrine of impossible considerations applies when the thing is " impossible in its nature"—*in rerum natura*,—but not where it is only "impossible in fact."—Story on Con., §141. Suppose defendants had put five or ten or fifty layers of tin on the roof; it is certain that they could have prevented it from leaking by putting on enough layers. It is clearly not " impossible in its nature"—*in rerum natura*.—Story on Con., § 141. (Story on Contracts, cited here, is the first edition; the same may be found in the second edition, section 463.)

We defy the production of any authority for applying the doctrine of " impossible consideration," as contended for by defendants, to any such case as this.—Story's Eq. Jur., § 1307; Wardell v. Fosdick, 13 Johns. 325.

3. The doctrine of *estoppel in pais* applies to the defendants with full force. By their representations and warranty, they induced plaintiff to abandon his formed purpose of covering the building with a slate roof, and to lay out his money in buying tin for a tin roof ; they worked up that tin, and made a roof out of it, which leaks badly, and has badly injured the building of plaintiff. The tin, of course, is now worthless, or nearly so. The defendants, after putting on this roof, received the stipulated price for putting it on ; and now, with that money in their pockets, and after thus deceiving plaintiff, breaking their warranty and injuring plaintiff, they cannot

be permitted to say that they promised to do what was impossible : they are estopped from setting up any such defence. 1 Greenl. Ev. 240, § 207; McCravy v. Remson, 19 Ala. R.; Dezell v. Odell, 3 Hill's (N. Y.) R. 215, and cases there cited; Stone v. Britton, 22 Ala. 548; Wardell v. Fosdick, *supra.*

4. The only proof as to impossibility of consideration, set forth in the bill of exceptions, was proof which tended to show " that, at the time said roof was put on as aforesaid, it was impossible to put a tin roof on *such a building*, which would not leak *any* for twenty years, or which would last for twenty years without leaking *any.*" The first charge of the court is, " that if they believed from the evidence that the defendants represented or warranted that they would put on said building of plaintiff a tin roof which would not leak any for twenty years, or which would last for twenty years without leaking any, and that it was impossible with any human skill or ability, at the time of such representation or warranty, to put such a roof on said building, that then they must find for the defendants, and plaintiff could not recover." Under the pleadings and proof, this charge is contrary to all law and all justice. There was no evidence to authorize the charge on this subject—that is, to turn the plaintiff out of court, merely because " it was impossible", &c., " at the time of such representation or warranty, to put such a roof on said building." Suppose it became possible (as it might, in this age of progress), in a week afterwards : this court will reverse whenever a charge authorizes a jury to draw an inference opposed to all the evidence.—Carey v. Hughes, 17 Ala. Rep.

The second charge does not cure the error in the first charge, nor vary its effect; for it only informs the jury, that if it was possible for the defendants to put such a roof on such a building, " that then the defendants would be bound to make or put on such a roof." This second charge does not instruct the jury, that if they believed the hypothesis embodied in it, the plaintiff could recover in this action, but only that the defendants " would be bound to make or put on such roof." The second charge itself is against the law and the evidence. When and how were the defendants " bound to make or put on such roof"?

Nor does the the third charge (which was given at the re-

quest of plaintiff, after the other charges had been given) cure the error of either the first or second charge. The plaintiff does not contend that he can revise the giving of this third charge : he knows he cannot, because he requested it. But he asked this charge, after the other charges had been given, as " the best he could get" from the presiding judge, and because he wanted to get the presiding judge to go as far *towards* the law as he could be persuaded to go.

The fourth charge is the most palpable violation of law. In effect, it declares, that although the defendant warranted or represented " that the roof he should build for the plaintiff would last for twenty years without leaking during that period", yet if they believed " that, at the time said representation or warranty was made, it was impossible to cover a roof with tin, of the character of that covered by defendants for plaintiff, that would not leak for twenty years, and that plaintiff knew, or with reasonable diligence might have known, this impossibility, then they must find for defendants." This charge is wrong in all points, but most glaringly so in holding, that if " with reasonable diligence plaintiff might have known" (although he did not know) " this impossibility", this of itself would bar all his rights and prevent a recovery in this action.—Rutherford v. McIvor, 21 Ala. 750 (3d head-note). This charge also denies, in effect, the right of the plaintiff to trust to the representations, and even to the warranty, of men of skill in matters of their own trade : " *quisquis est credendus, sua arte.*" It was no fault in plaintiff to rely on and trust to the representation and to the warranty of defendants, without making full inquiry. The defendants were men of skill, and might be trusted.—Young v. Harris, 2 Ala. 108; Camp v. Camp, *ib.* 632 ; Monell v. Colden, 13 Johns. 395. But as there was fraud and a warranty, plaintiff's knowledge of the matter could not defeat his rights ; for a warranty extends to all defects, known or unknown. By warranting, the defendants became *quasi* insurers.—Monell v. Colden, 13 Johns. 395. This court will notice, that not one of the charges allows the plaintiff to recover, even if he was ignorant. Even the third charge does not go that far ; and it is clear the jury have not found that plaintiff did know of any impossibility. On the contrary, the evidence shows that defendants assured him

that such a roof could and would be put on for him ; and as defendants were skilled in their trade, plaintiff had the right to rely on their representation and warranty.—Oldham v. Bentley, 6 B. Mon. 431..

The fifth charge is also clearly erroneous. The declaration and evidence both show, that the representations and warranty of defendants were not made " as to the original plan of the roof", nor as to any particular plan of the roof ; but these declarations and warranty of defendants were that they could and would put *on said building* a tin roof which would not leak for twenty years. A material change " in the plan of the roof" could not exempt them from all liability, when it is clear that they proceeded (without any objection as to any change in the plan of the roof) to put on a tin roof, which leaked badly and injured the house, and received their pay for the same according to the agreed price—the very price fixed for putting on the roof. The charge is against law, and not warranted by the evidence.—Carey v. Hughes, 17 Ala. R.

The sixth charge is also erroneous. Even if the plaintiff himself, or his authorized agent, had paid defendants the agreed price for their work, " after the discovery of such leaking, and a full knowledge of all the facts connected therewith", such payment could not have operated, *per se*, as a bar to this suit or to a recovery on either count. Such payment is neither a waiver of the fraud or warranty.—Huckabee v. Albritton, 10 Ala. 657. Such payment is neither a release, nor receipt of something in satisfaction for the wrong done,—one of which is essential to destroy a right of action.—Leavitt v. Smith, 7 Ala. 182, and cases cited on that page. But the payment was not made by plaintiff or his agent, but by Wright, who never was the agent of plaintiff, as the proof shows. As soon as the roof leaked and injured the house, a right of action vested in plaintiff, which has never been released nor satisfied. The leak continues since the alleged payment, and the damages are continuing. How can such payment to defendants, of the agreed price of their work, destroy plaintiff's vested right to recover not only for the damages done before such payment, but the damages done since such payment ? " Whenever an injury is, in its nature, continued, there can be no question that the party injured is entitled to recover for all damages

sustained previous to the trial."—Pepoon v. Clark, 1 Mills' Const. Rep. (S. C.) 65-137; Puckett v. Smith, 5 Strob. Law Rep. 26.

The argument of defendant's counsel, that all the charges ought to be grouped together and reconciled, is unsound. If that were done, parties might (and would often) be deprived of their legal rights, because this court can never tell under what particular charge the jury found their verdict. For instance, in this case, several of the charges tell the jury that if they believe a few specified facts, they must find for defendants. How can this court say that the jury did not find their verdict under only one of those charges? And how can this court tell under which one of those charges the jury did find? The rule is clear, that however correct one charge may be, yet if another charge is given which is incorrect, this court will reverse. That is the true doctrine.—Holmes v. The State, 23 Ala. 17. The argument that the jury have found that plaintiff knew it was impossible for defendants to make such a roof as they represented and warranted they would make, is not sustained by the record. No charge turned upon that matter singly; and if it had, this court could not say that the jury found under that charge, for they may have found under one of the other charges. Each charge must be judged by itself, in connection with the evidence. Thus judging the several charges, not one of them lays down the law correctly: they severally deny the plaintiff the rights which the law secures to him.

The case of Gilmer v. Ware, 16 Ala. 252, has no application to this case : the facts of that case place it in a different class from this.

No court of justice can, on deliberation, sustain the defences relied on here ; for " wherever there is a deceit, coupled with an injury, an action on the case will lie."—Morgan v. Patrick, 7 Ala. 187; Oldham v. Bentley, 6 B. Mon. 431. It matters not in what the deceit may consist—whether in a false representation by men of skill, respecting a matter in their own trade, that they would do a possible or impossible thing, or in a false warranty that they would do a possible thing or an impossible thing. Men of skill have no legal right to deceive and acquire money by their deceit, and then with that money

in their hands to say to the injured party, "You ought to have known, or might have known, that we could not do what we said we would do for you ; that we were telling you a falsehood, in order to get your money."

WATTS, JUDGE & JACKSON, *contra* :

1. The declaration was demurred to in the court below, on the ground that case and assumpsit are joined in different counts. The demurrer, we think, was erroneously overruled. If, however, case and assumpsit are not joined in the declaration, one of the counts is a count in case for a deceit, and the other a count in case for a false warranty. But take the declaration as it is stated to be by appellant, and still no principle can be deduced therefrom which will avail him, or affect the case in its present aspect. Whether a warranty was made or not, it is clear that a contract was entered into between the parties. A contract, or undertaking, is set forth in each count of the declaration. The *gravamen* of the complaint, in each count, is, that defendants did not comply with or perform the contract, as set forth, in consequence of which (it is alleged) injury and damage have resulted. Under the averments of the declaration, then, plaintiff below was not entitled to recover, unless there was a valid contract between the parties. We contend that the contract was impossible of performance, and therefore void. "*Lex neminem cogit ad vana aut impossibilia.*"—Story on Cont., p. 379, § 462; Chitty on Cont., mar. p. 58; *ib.*, mar. p. 630; Parsons on Cont., 382-3-4.

Contracts void because founded upon impossible considerations, are divided into two classes—1st, those void because founded upon a consideration impossible in fact ; and, 2d, those void because founded upon a consideration impossible in law. For instances of each class, see Story on Cont., p. 379, § 462. The contract in this case comes within the first class ; and it is, consequently, a question of fact to be decided by a jury, whether it be possible or impossible of performance. No court could judicially know whether or not a tin roof could be built that would not leak any for twenty years ; or whether or not a man could "go from Westminster to Rome in three hours." In this case, the question of possibility or impossibility of performance was submitted to that tribunal

which alone could decide it—the jury. Their decision upon
it is final, and it cannot be disturbed by this court, whether
properly or improperly decided, if there was evidence upon
which it might have been decided ; and the court below did
not err in laying down the law upon the question.

Did the court err in either of the charges to the jury on
this question? Take the charges given, separately and singly,
or collectively, and there is no error in either. The point of
defence being that the contract was void because it was founded
upon a consideration impossible in fact, and evidence that such
was the fact (viz., that it was impossible to do the act under-
taken to be done) having been introduced before the jury,
the court below could not have done otherwise than to charge
the law as it is laid down in the first charge given. But to
prevent misapprehension, or the jury from being misled by
the said first charge, the court below, for the benefit of the
plaintiff, gave the second charge. The second charge was in
explanation of the first, and favorable to the plaintiff, although
he excepted to it. The third charge, given in the same con-
nection, was given at the request of plaintiff ; and we contend
that said third charge was erroneous, as against the defendants.
It is not contended, that under the supposed state of facts,
Williams would not be responsible. He would be liable in
an action on the case, but not for not performing his contract,
as is this action : the action should be for "falsely and fraud-
ulently representing that he could cover the roof with tin so
that it would not leak any for twenty years, when he knew
that it was impossible in fact so to do ; and that plaintiff, not
knowing to the contrary, relied and acted upon the represen-
tation to his injury." Such an averment would have authorized
such a charge as the third charge to be given. The fourth
charge is intimately connected with the third, and whether
properly or improperly given, is immaterial ; for, the declara-
tion being upon a contract, if that contract is void for an
impossible consideration, it matters not whether McGar and
Williams, either one or both, knew, or did not know, that the
consideration was possible or impossible ; or whether either
one or both might, or might not, with due diligence, have
known it ; for no count in the declaration was framed with a
view to hold Williams liable for a fraud, in any other aspect

31

than for not performing his contract. Hence, if there should be error in the fourth charge, it is error without injury. If an action be brought upon a contract, no matter whether it be case or assumpsit, if the contract is void for an impossible consideration, knowledge or want of knowledge (in either one or both of the parties) that the contract is void for this reason, is wholly immaterial.

2. But it is contended by counsel for the appellant, that the doctrine of "impossible considerations" has no application to this case. This doctrine has application to every contract founded upon a consideration impossible in fact, as well as impossible in law.—See Story, Chitty, and Parsons, on Contracts, *supra*. In the language of Lord Kenyon, in Nerot v. Wallace, 3 Term Rep. 17, "The ground on which I found my judgment is this : that every person who, in consideration of some advantage either to himself or to another, promises a benefit, must have the power of conferring that benefit, up to the extent to which that benefit professes to go, and that not only in fact, but in law."—3 Term Rep. 17.

There is a distinction between contracts impossible in their nature, and impossible in fact, on account of contingencies not provided for. For the distinction, and cases illustrative of the distinction, see Story on Cont., pp. 380-81, § 463. The contract in this case is of the former nature ; for the jury found upon the evidence, under the charge of the court, " that no possible skill, labor, or expenditure," could accomplish it.

It is also said that the doctrine of "impossible considerations" does not apply to this case, "because it is founded upon a reason that does not exist in or apply to this case"; for, it is said, it applies only to cases where "no possible benefit can be derived to the one party, and no detriment to the other." This is not, cannot be so, and the authorities cited do not sustain the position. Parsons on Contracts, cited to sustain it, says : " One may make a promise which it is utterly impossible to perform, and nevertheless the promisee may derive a positive advantage from it. In such a case the advantage would be a good consideration, but not the promise by itself." Parsons on Cont. 383.

3. We have been considering the case upon the supposition that the contract is the *gravamen* of the action in both counts

of the declaration. But inasmuch as it is contended that both counts are good, as upon a contract with a warranty, as well also as for a deceit in making fraudulent representations, irrespective of any contract, we will now notice the case in this double aspect. Take the case in either aspect, and (all the evidence being set out in the bill of exceptions) this court must perceive and hold that McGar was not entitled to recover. In the contract and warranty aspect of the case, he was not entitled to a verdict, because the contract and warranty was to do an impossible thing. In the other aspect of the case (there being no contract or warranty), he was not entitled to recover, because, by the payment of the money for the work done, with a full knowledge of all the facts constituting the fraud, if any, he elected to waive the fraud, and could not afterwards set it up.—Gilmer v. Ware, 19 Ala. 252. The foregoing propositions being correct, in neither aspect of the case was McGar entitled to recover ; and if there was error, it was error without injury.

4. The doctrine of *estoppel in pais*, which is invoked for the aid of McGar, has no application to the case, except in so far as it applies to estop McGar from suing for a fraud which he has waived. If it applies, as contended for by counsel on the other side, it follows, that if one contracts to perform a physical impossibility, and represents that he can do it, although the contract be void and impossible, yet it must be performed ! There must be mutuality in an estoppel, for " one who is not bound by, cannot take advantage of it": "it must be reciprocal to every intent."—Lansing v. Montgomery, 2 Johns. 382; Bolling v. Mayor, 3 Rand. 563. And estoppels are not favored.—4 Mass. 180; *ib.* 273; 9 Pick. 520. And they must be certain to every intent, and precise and clear.— 3 Miss. 529. Further : " where it appears, in that which would otherwise work the estoppel, that the act or deed is void, the party is not estopped from showing the truth."— Sinclair v. Johnson, 8 Cow. 543.

5. It is said that appellees deceived McGar,—by the deceit acquired money, which they have in their pockets,—and that with this money in hand, they say to McGar, " You ought to have known we could not do what we promised to do." If we have McGar's money, the law presumes he got the worth

of it, or he would not have voluntarily paid it, with a full knowledge of all the facts. That we have a right to defend when sued upon the contract, we have already shown; and that the fraud, if any, has been waived by McGar, has also been shown.

There is no error in the fifth charge; but if there is, it is error without injury; for all the evidence is set out in the bill of exceptions, and from it it clearly appears he is not entitled to recover, irrespective of the matter charged upon in said fifth charge.

6. The sixth charge is fully sustained by Gilmer v. Ware, 19 Ala. 252.

CHILTON, C. J.—In Oldham v. Bentley, 6 B. Mon. 428-31, the rule of law is stated, with much accuracy, to be, that a false and fraudulent representation, made by one party to a contract, whereby he makes gain to himself and occasions loss to the other party, gives to the defrauded party a cause of action for the deceit; *provided*, the representation relate to a matter deemed material, and as to which the deceived party has a right to require a promise from the other, or to look to him for a true representation.

Let us apply this rule to the case before us. The defendants followed the business of putting on tin roofs, and it was material, as furnishing a strong inducement for the plaintiff to employ them, to be informed as to the extent of their skill, and the length of time which a roof put on by them would last without leaking. The plaintiff had a right to rely upon their representations as to these matters, for they are supposed to be peculiarly within their knowledge, pertaining to their art or calling; and if they made false representations, whereby the plaintiff was induced to employ them, and have thus knowingly deceived and defrauded the plaintiff by causing him to believe that they could put on a tin roof which would last twenty years without leaking, we know of no principle of law which would allow them to hold on to the gains from such a transaction, and avoid all liability, upon the ground that the representation which constituted the inducement for the plaintiff to part with his money was not only false, but incapable of being made good. If the plaintiff was

deceived by the false and fraudulent representations made by the defendants, to his injury and their gain, it would be to allow them to take advantage of their own wrong, to permit them to set up the impracticability of making good their representation as a reason for retaining such gain. "The law", it is said, "will not sanction dishonest views and practices, by enabling an individual to acquire through the medium of his deception any right or interest."—Broom's Maxims 320.

While it is certainly true, that the law will not seek to compel a man to perform that which is either vain or fruitless, or which he cannot possibly perform, at the same time it will not permit him, by false and fraudulent practices or assertions, to obtain money as the price of a proffered good which he cannot confer. The fraud and consequent injury constitute the wrong for which the law gives the remedy ; and in this form of action, regard can be had to the nature of the representation, or thing promised to be done, only so far as is necessary to determine whether these essential requisites exist, and the *quantum* of the damages sustained.

If a man contract with another that he will build a tower which shall reach to the moon, this would be vain, foolish, and impossible in the nature of things. It would create no obligation, for the maxim, *"Lex non cogit impossibilia"*, would apply. No one, having sufficient capacity to contract at all, could be deceived in a matter so obviously ridiculous and impracticable ; and consequently, no action of deceit would lie for any such false assurance or representation. But it is very different in a case like the one before us, where persons holding themselves out to the world as skilled in a particular branch of mechanics induce others to incur expense and part with their money, upon false and fraudulent assurances that their skill will enable them to accomplish results which, although hitherto deemed unattainable, are not manifestly absurd and essentially impracticable in the nature of things. Concede that workmen are generally agreed that a tin roof cannot be made which will last twenty years without leaking, still it is not palpably impossible, if it be so at all. There is nothing in the nature of things, which renders it absurd or ridiculous to believe that human skill and ingenuity has attained, or may attain, to such a result ; hence there is no reason why the

defendants could not have committed a fraud, or made a false warranty, respecting it. They are, as we have said, workmen, supposed to be skilled in this branch of business; and however improbable the result which they proposed to attain, the plaintiff might well have reposed upon the presumption that they knew the completion of the duty they had undertaken was within the compass of their power.—Broom's Legal Maxims, p. 121, and notes. We come, therefore, to the conclusion, that the court erred in submitting to the jury, as a turning point in the cause, the question as to the practicability of making good their assurance, or representation, on the part of defendants, that the roof should last twenty years without leaking. The true question was, whether the representation, if made, was false, and whether the plaintiff was deceived thereby to his injury. That they promised more than their skill would enable them to perform, neither lessens the fraud nor in any way mitigates the injury.

We think the court very correctly laid down the law in the fifth charge. If the defendants' representations, or warranty, related to putting a roof upon the building to be erected after a given plan, and the plaintiff caused a material change to be made in the building without the consent of the defendants, thereby rendering it necessary to make a material change in the form of the roof, the plaintiff must be considered as having abandoned the original contract, and could not be allowed to hold the defendants bound by any agreement or representations made with respect to the original plan. If, on the other hand, the agreement and representation as to the character of the roof had no reference to any particular plan or form of the roof, and the defendants proceeded, under their contract, without any objection to the alteration of the plan, to put the roof on the building, then the change, although it might have rendered it more difficult to cover securely, would not affect the defendants' liability.

The court below, we are of opinion, committed an error in giving the sixth charge, as to the effect of the payment. It was not an absolute bar to a recovery, on either count, but was a circumstance to be weighed by the jury, as tending to show that no fraud was committed. It was for them to decide, whether the plaintiff, or his authorized agent, with a full

knowledge of the defects, would have completed the payment without objecting to the work, if the defendants had falsely and fraudulently promised, or represented, that the roof which they would put on would last twenty years without leaking any.

This case is distinguishable from Gilmer v. Ware, 19 Ala. 252, cited by defendants' counsel. Here, the fraud (if any) and injury were consummated before the payment; and to hold the payment to be a bar, would give it the effect of releasing a right of action which had already accrued. In that case, however, the contract, so far as the purchaser was concerned, was inchoate ; and being fully advised of the fraudulent circumstances, before he completed the contract by complying with his bid, the purchaser could not have been deceived, but elected to take the property as it was by paying for it ; thus, as it were, incorporating the alleged fraudulent circumstances into the contract. The payment in this case, if made with a full knowledge of the defects or leaks in the roof, is, at most, but evidence to be weighed by the jury, tending to show that no false or fraudulent representation was made to the plaintiff's injury. It cannot operate as an *estoppel in pais*, nor as a release or waiver of an existing cause of action.—Huckabee v. Albritton, 10 Ala. 657.

Let the judgment be reversed, and the cause remanded.

RICE, J., having been of counsel, did not sit in this case.